IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| VIANAY RODRIGUEZ, | § | NO. 5:23-CV-379-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| GRYPHON HOLDCO, LLC, and CONOCOPHILLIPS COMPANY, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

ORDER GRANTING DEFENDANTS' MOTIONS TO COMPEL ARBITRATION AND OVERRULING OBJECTIONS

The matters before the Court are: (1) Defendant Gryphon Holdco, LLC's ("Gryphon") Motion to Compel Arbitration and Dismiss Arbitration Proceedings (Dkt. # 20), (2) Plaintiff Vianay Rodriguez's ("Plaintiff" or "Rodriguez") Objections to Gryphon's Reply Brief (Dkt. # 26) and (3) Defendant ConocoPhillips Company's ("ConocoPhillips") Motion to Compel Arbitration (Dkt. # 24). The Court finds these matters suitable for disposition without a hearing. After careful consideration of the memoranda in support of and in opposition to the motions and objections, the Court, for the reasons that follow, **GRANTS** both motions to compel, and **OVERRULES** Plaintiff's objections.

## BACKGROUND

On March 28, 2023, Plaintiff Vianay Rodriguez filed suit against Gryphon and ConocoPhillips in this Court. (Dkt. # 1.) Plaintiff's amended complaint alleges that she was hired as a temporary employee at ConocoPhillips through Gryphon in July 2020, as a Covid-tester, or Emergency Medical Technician, at ConocoPhillip's office in Kenedy, Texas. (Dkt. # 9 at 2.) Plaintiff's supervisor was Tim Allen, an employee of ConocoPhillips. (Id.) According to Plaintiff, she began experiencing unwanted sexual comments and sexual harassment from Allen, including Allen telling her that her "eyes were hyponotizing, [and that she] was very attractive." (Id. at 3.) Plaintiff also alleges that Allen showed her the lactation room at the office, telling her that he was the only person with access to the room and then unzipped his pants in front of Plaintiff, showing her his erect penis. (Id.) Plaintiff contends that Allen told her that "he was a dirty boy and that it was [Plaintiff] who did that to him" and that if Plaintiff "could make him happy, [she] could keep her job and even get hired at Conoco full-time in the future." (Id.) Plaintiff states Allen then walked out of the lactation room. (Id.)

Plaintiff further alleges that Allen continued to make sexual advances toward her, including telling her that he wanted to "lick [her] p**sy," and that she made him a "naughty boy" and that he loved her. (Dkt. # 9 at 3.) According to

Plaintiff, Allen also sent her unwanted text messages which expressed his love for her but were also sexually harassing. (Id.) Plaintiff alleges that she attempted to tolerate Allen's behavior to continue her employment because Allen threatened her with his 30-year tenure at ConocoPhillips. (Id. at 4.) Allen also told Plaintiff that "no one would believe a Hispanic uneducated female." (Id.)

Thereafter, Plaintiff asserts that in November 2020, the lobby receptionist forwarded Allen information that Plaintiff was invited to dinner by another employee. (Dkt. # 9 at 5.) The same night, Plaintiff alleges that her manager at Gryphon, Don Dulaney ("Dulaney"), informed her that Allen wanted her terminated and removed from ConocoPhillip's property. (Id. at 6.) According to Plaintiff, Dulaney then terminated her despite there being no complaints against her and having received praise for her work. (Id.)

Plaintiff alleges she then filed a complaint with the Equal Opportunity Employment Commission ("EEOC") alleging sex discrimination and retaliation. (Dkt. # 9 at 6.) The EEOC issued a letter of determination in Plaintiff's case, finding her claims were substantiated. (Id.) Plaintiff alleges that Gryphon refused the EEOC's conciliation efforts, and she then chose to file suit in this case. (Id.)

Plaintiff's amended complaint alleges claims against Gryphon and ConocoPhillips for sex discrimination and retaliation. (Dkt. # 9.) On August 11, 2023, Gryphon filed a motion to compel arbitration. (Dkt. # 20.) On August 25,

2023, Plaintiff filed a response in opposition (Dkt. # 23); on September 1, 2023, a reply was filed (Dkt. # 25). On September 1, 2023, ConocoPhillips filed its own motion to compel arbitration. (Dkt. # 24). On September 15, 2023, Plaintiff filed a response in opposition and lodged objections to Gryphon's reply brief (Dkt. # 26); on September 19, 2023, a reply was filed (Dkt. # 27).

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).

The Fifth Circuit employs a two-step analysis to determine whether the parties have agreed to arbitrate a dispute. Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 381 (5th Cir. 2008) (citations omitted). First, a court must ask if the parties agreed to arbitrate the dispute. Webb v. Instacorp., Inc., 89 F.3d 252, 258 (5th Cir. 1996). This determination requires consideration of whether a valid agreement to arbitrate exists among the parties and whether the dispute is within the scope of the arbitration agreement. Id. In making this determination, courts

should generally apply "ordinary state-law principles that govern the formation of contracts," but must give due regard to the federal policy favoring arbitration and resolve any ambiguities as to the scope of the arbitration clause itself in favor of arbitration. Id. Once a court determines that the parties agreed to arbitrate, the court must assess whether any legal restraints external to the agreement foreclose arbitration of the dispute. OPE Int'l L.P. v. Chet Morrison Contractors, Inc., 258 F.3d 443, 445–46 (5th Cir. 2001).

DISCUSSION

I. Gryphon's Motion to Compel Arbitration

The Court will first address Gryphon's motion to compel arbitration. (Dkt. # 20.) According to Gryphon, as a condition of her employment with Gryphon, Plaintiff executed an arbitration agreement on August 5, 2020, which expressly covers her claims in this suit. (Dkt. # 20 at 2.) Gryphon argues that the Court therefore must compel arbitration and dismiss Plaintiff's claims. (Id. at 2.)

A. Whether a Valid Arbitration Agreement Exists

The Court must first decide (1) whether a valid arbitration agreement exists and, if so, (2) whether the dispute falls within the arbitration agreement's scope. Edwards v. Doordash, Inc., 888 F.3d 738, 743 (5th Cir. 2018). Deciding whether the arbitration agreement is valid is an "analysis of contract formation[.]" Id. (citations omitted). After the movant produces "competent evidence showing

the formation of an agreement to arbitrate . . ., [the] party resisting arbitration [must] produce some contrary evidence to put the matter 'in issue.'" Gallagher v. Vokey, 860 F. App'x 354, 357–58 (5th Cir. 2021).

Pursuant to Texas law, "a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds (mutual assent); (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." Huckaba v. Ref-Chem. L.P., 892 F.3d 686, 689 (5th Cir. 2018) (quoting Copeland v. Alsobrook, 3 S.W.3d 598, 605 (Tex. App.—San Antonio 1999, pet. denied)). "The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." In re Capco Energy, Inc., 669 F.3d 274, 280 (5th Cir. 2012)). Additionally, a valid contract requires consideration. Id. And Texas law recognizes the legal effect of electronic signatures. Tex. Bus. & Com. Code § 322.007(a) ("A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.").

Accordingly, to determine whether an offer, an acceptance, and a meeting of the minds took place, the Court looks to "what the parties said and did." Here, Gryphon contends that it offered Plaintiff paid employment, and Plaintiff indicated her acceptance of Gryphon's offer, and consent to its terms, by

completing Gryphon's electronic onboarding process documents ("Centaur Entertainment New Hire Packet") offered by Centaur Employment Co., LLC ("Centaur"), a wholly owned subsidiary of Gryphon. (Dkt. # 20-1.) Gryphon further asserts that Plaintiff indicated her acceptance of these documents by electronic signature, signing several documents on August 5, 2020, between 12:43am and 12:44am. (Id.) According to Gryphon, the time stamp date by Plaintiff's signatures also includes unique identifying information including an IP address from which the documents were signed. (Id.) As part of the Centaur Entertainment New Hire Packet, Gryphon maintains that Plaintiff also signed an "Arbitration Notice" which acknowledges that

> Company . . . *expressly agree that any controversy or dispute between Employee and Company* or any of its owners, officers, agents, affiliates (expressly including *Gryphon Holdco, LLC* and Emergency Sphinx Protection, LLC) . . . *arising from or in any way related to the performance of Services, this Agreement, or the termination thereof* . . . *shall be resolved by final and binding arbitration* administered by JAMS under its Employment Arbitration Rules & Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness then applicable to the dispute. . .
>
> *All disputes must be arbitrated*. It is the intent of the Parties thereto that all disputes between them must be arbitrated, *expressly including, but not limited to, . . . (ii) any claim of discrimination under federal or state law, such as, but not limited to, discrimination based on age, disability, national origin, race, or sex* . . . and (vii) any other claim of any nature, whether contractual, tortious, common-law, statutory, or regulatory, arising out of, or in any way related to, Employee's performance of the Services, the termination thereof, or any other matter incident thereto.

(Dkt. # 20-1 at 8 (emphasis added).)

In response, Plaintiff contends that Gryphon has failed to establish that the parties agreed to conduct business electronically. (Dkt. # 23 at 3.) Plaintiff further argues that Gryphon failed to provide any evidence about the efficacy of its security procedures related to employee onboarding, and that her electronic signature is invalid under the Texas Uniform Electronic Transaction Act ("TUETA"). (Id. at 4.) Plaintiff also asserts that Gryphon failed to establish the requisite personal knowledge about what the third-party vendor who provided the electronic onboarding information ("Paylocity") did or did not do related to Plaintiff's onboarding experience. (Id. at 5.) In further support of her arguments against compelling arbitration, Plaintiff has attached her own declaration, which states that she did not receive any email from Paylocity and that she "did not sign an arbitration agreement" and that she "reviewed [her] supposed signatures and those are not [her] signatures." (Dkt. # 23-1.)

In a motion to compel arbitration, the Court must construe all factual conflicts in Plaintiff's favor, like the Court would if deciding a motion for summary judgment; however, Plaintiff may not use her own self-serving affidavit, with no other evidence, to create a fact question. See DIRECTV, Inc. v. Budden, 420 F.3d 521, 531 (5th Cir. 2005) (citing BMG Music v. Martinez, 74 F.3d 87, 91 (5th Cir. 1996)) (affirming summary judgment for plaintiffs where "the only evidence in support of the defendants' theory is a conclusory, self-serving

statement by the defendant"). Here, Gryphon's evidence indicates that to complete Paylocity's electronic employment process,[1] applicants are provided a unique identification number, which is sent by Paylocity to the applicant's email address. (Dkt. # 20-1 at ¶¶ 9–21.) To begin the process, employees must create a unique password which is not shared with Gryphon. (Id. at 4, 10.) Then, once a document is signed, it is time-stamped with the employee's name, IP address, and date and time.[2] (Id. at 5.) Gryphon is not able to modify an employee's onboarding documents. (Id.) Finally, before an application is marked as completed, the employee must review, acknowledge, and electronically sign all documents individually. (Id. at 6.) Gryphon asserts that all employees must complete this onboarding process as a condition of their employment. (Id. at 1–3.) There is no evidence which indicates that Gryphon has deviated from this practice in Plaintiff's

[1] According to Gryphon, Paylocity is a third-party company who provides cloud-based payroll and human capital management software to onboard employees. (Dkt. # 20-1 at 3.) "Paylocity allows employees to complete various employment-related tasks, including the review and acknowledgement of Gryphon's policies and procedures." (Id.)

[2] Plaintiff also argues that her electronic signature is somehow invalid under the Texas Uniform Electronic Transaction Act ("TUETA"). (Dkt. # 23 at 4.) The Court disagrees. Even if Plaintiff had unequivocally denied signing the Arbitration Notice, her presented evidence—solely her own self-serving affidavit—does not sufficiently support her allegations. See Dillard v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992). Notably, she fails to explain how the electronic signature on the agreement is not hers.

case, other than Plaintiff's own declaration which disputes Gryphon's assertion that she was presented with this process from Paylocity.[3]

Notably, other district courts who have considered similar issues have been unwilling to rely only on a plaintiff's own declaration which disputes the validity of an arbitration agreement in deciding whether one existed between the parties. See, e.g., Floyd v. Kelly Servs., 2019 WL 4452309, at *4–5 (N.D. Tex. Aug. 30, 2019); Wheeler v. Dollar Tree Stores, Inc., 2017 WL 3426300, at *2 (W.D. La. Aug. 8, 2017). Additionally, while Plaintiff contends that Gryphon's failure to produce the actual email allegedly sent to her by Paylocity is evidence that she never received it, the Court disagrees. (See Dkt. # 26 at 3.) As Gryphon asserts, it has provided evidence that the email sent to Plaintiff contained only links to an onboarding portal and did not contain the Arbitration Notice itself. (Dkt. # 20-1 at 4.) Furthermore, a party's failure to produce an over three-year old email is not convincing evidence of its nonexistence particularly where Plaintiff's only evidence in support of its nonexistence is her own declaration.

[3] Although Plaintiff disputes that Dulaney's declaration is not based on personal knowledge because he did not work for Paylocity but only for Gryphon, the Court disagrees. (See Dkt. # 23 at 4.) Dulaney declared that he is "fully aware of and can attest to" Plaintiff's onboarding process through Paylocity, and that his job duties include "obtaining information from Paylocity [] maintained by and on behalf of Gryphon," attaching ample evidence to support his documentation. (Dkt. # 25-1.)

Still, even if Plaintiff had not expressly agreed to the Arbitration Notice, she accepted it by working for Gryphon. "[A]cceptance need not be anything more complicated than continuing to show up for the job and accept wages in return for work." Kubala v. Supreme Prod. Servs., Inc., 830 F.3d 199, 203 (5th Cir. 2016). In Texas, when an "'employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit. If the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law.'" Id. (quoting Hathaway v. Gen. Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986)). Here, Gryphon did not modify the Arbitration Notice after Plaintiff began working; rather, executing the Arbitration Notice, together with the other electronic onboarding documents, was a precondition for employment. Therefore, even if Plaintiff did not sign the Arbitration Notice as she contends, by starting work for Gryphon, she indicated her acceptance of its employment terms. Accordingly, the Court finds that the parties had a valid agreement to arbitrate.

B. Whether the Dispute Falls within the Arbitration Agreement's Scope

The Court must next consider whether the Parties' dispute falls within the scope of the Arbitration Notice. In determining the scope of the Arbitration Notice, the court considers the language of the agreement; if broad language is used, then arbitration should be compelled, and any disagreement over its scope

should be resolved by the arbitrator. Hornbeck Offshore Corp. v. Coastal Carriers Corp., 981 F.2d 752, 754–55 (5th Cir. 1993). If the language of the arbitration clause is phrased narrowly, the matter should not be referred to arbitration or stayed unless the court determines that the dispute falls within the clause. Id. Whenever the scope of an arbitration clause is debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. Id.; see also Safer v. Nelson Fin. Group Inc., 422 F.3d 289, 294 (5th Cir. 2005).

Upon careful consideration, the Court finds the Arbitration Notice contains a valid delegation clause. The Fifth Circuit has held that an arbitration agreement "need not contain an express delegation clause to meet this standard; rather, an arbitration agreement that incorporates the AAA Rules or JAMS Rules 'presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'" Archer & White Sales, Inc. v. Henry Schein, Inc., 935 F.3d 274, 279 (5th Cir. 2019) (opinion on remand) (quoting Petrofac, Inc. v. DynMcDermott Petroleum Operations Co., 687 F.3d 671, 675 (5th Cir. 2012)), cert. denied, 141 S. Ct. 656 (2021); accord Cooper v. WestEnd Cap. Mgmt., L.L.C., 832 F.3d 534, 546 (5th Cir. 2016) (holding that express adoption of JAMS Rules "presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability").

Here, the Arbitration Notice expressly incorporates the JAMS Rules, stating that any dispute will be conducted by "JAMS under its Employment

Arbitration Rules & Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness then applicable to the dispute. . . .” (Dkt. # 20-1 at 8.) JAMS Employment Arbitration Rule 11(b) contains a delegation clause granting the arbitrator the power to resolve any dispute regarding arbitrability:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.[4]

Given this language, the Court finds that the express adoption of this rule “presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.” Cooper, 832 F.3d at 546. Because the Arbitration Notice here expressly incorporates the JAMS Rules, and those rules delegate arbitrability disputes to the arbitrator, there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.

C. Illusory

Plaintiff argues that where the terms and conditions of an arbitration agreement may be modified without notice, then it is illusory. (Dkt. # 23 at 7.) According to Plaintiff, given that the JAMS employment rules allow it to modify

[4] https://www.jamsadr.com/rules-employment-arbitration/english#Rule-11.

its rules without notice at any time, the Arbitration Notice is illusory. (Id.) Plaintiff also contends that Gryphon's handbook retains the unilateral right at "its sole discretion" to "modify, eliminate, revise or deviate from" its policies and therefore demonstrates that the agreement to arbitrate is illusory. (Id. at 9.)

Despite Plaintiff's contention, the Court finds that the Arbitration Notice is not illusory. An arbitration agreement is illusory "[w]here one party has the unrestrained unilateral authority to terminate its obligation to arbitrate." Lizalde v. Vista Quality Markets, 746 F.3d 222, 225 (5th Cir. 2014); see also In re 24R, Inc., 324 S.W.3d 564, 567 (Tex. 2010) ("An arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether."). Plaintiff does not argue that Gryphon has unilateral or unrestrained authority to amend the Arbitration Notice; instead, Plaintiff takes issue with the JAMS *procedural* rules governing arbitration in general. Additionally, the Arbitration Notice is a stand-alone contract which is not contained within Gryphon's handbook and therefore not subject to the same modification or revisions as are allowed in the handbook. See, e.g., Myers v. Solais Lighting, Inc., 2022 WL 441612, at *9 (E.D. Tex. Jan. 3, 2022) ("[N]umerous other courts have found that a separate arbitration agreement was not made illusory because an employee manual stated that the employer could

revoke, change, or supplement guidelines at any time without notice. Thus, there is no merit to these arguments." (collecting cases)).

Having carefully considered and rejected Plaintiff's arguments as to the validity and general enforceability of the Arbitration Notice, the Court holds that Gryphon has met its burden to prove the validity of the Arbitration Notice as to Plaintiff's claims. Gryphon's motion to compel arbitration is therefore **GRANTED**.

II. ConocoPhillips's Motion to Compel Arbitration

Moving separately, ConocoPhillips also argues that Plaintiff's claims against it must be compelled to arbitration on the basis that her Arbitration Notice, discussed above, is valid and that ConocoPhillips is entitled to enforce it under the doctrine of intertwined claims estoppel. (Dkt. # 24.) In support of its argument, ConocoPhillips contends that her claims against both it and Gryphon are so intertwined with each other, and even though ConocoPhillips was not a signatory to the Arbitration Notice, Plaintiff's claims against it should also be compelled to arbitration. (Id. at 7.)

Having already determined that there is a valid agreement to arbitrate and that the parties agreed to arbitrate arbitrability, the Court must next decide whether the Arbitration Notice can be applied to Plaintiff's claims against ConocoPhillips as a non-signatory to the agreement. "As a general rule, an

arbitration clause cannot be invoked by a non-party to the arbitration contract." G.T. Leach Builders, LLC v. Sapphire V.P., 458 S.W.3d 502, 524 (Tex. 2015) (quoting Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 532 (5th Cir. 2000), internal quotation marks omitted). However, a non-signatory to an arbitration agreement may compel a party to arbitrate a claim "if the relevant state contract law so permits." Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp., 748 F.3d 249, 261–262 (5th Cir. 2014).

The Fifth Circuit has stated that it is bound by its previous precedent to "assume that intertwined-claims estoppel exists in Texas." Newman v. Plains All Am. Pipeline, L.P., 23 F.4th 393, 404 (5th Cir. 2022). Intertwined-claims estoppel applies when: (1) "a nonsignatory has a 'close relationship' with one of the signatories," and (2) "the claims are 'intimately founded in and intertwined with the underlying contract obligations.'" Id. (quoting Hays v. HCA Holdings, Inc., 838 F.3d 605, 612 (5th Cir. 2016)).

Here, ConocoPhillips asserts that it has a "close relationship" with Gryphon and that Plaintiff has pled as much in her amended complaint. (Dkt. # 24 at 7.) In Newman, the Fifth Circuit applied the Texas law standard wherein a "close relationship" is a term of art "generally requiring formal corporate affiliation." Id. at 404–05 (citing Jody James Farms, JV v. Altman Grp., Inc.,

547 S.W.3d 624, 640 (Tex. 2018)). "The relationship 'must be closer than merely independent participants in a business transaction.'" Id. at 405 (quoting Jody James, S.W.3d at 640). It is evidence of a "close relationship" when a plaintiff "treat[s] multiple defendants 'as a single unit' in their pleadings, 'raising virtually indistinguishable factual allegations' against them." Id. (quoting Hays, 838 F.3d at 612–13).

In this case, Plaintiff treats all defendants as a single unit in her pleadings, particularly in first amended complaint, in which she raises virtually indistinguishable factual allegations against all defendants. (Dkt. # 9.) Indeed, Plaintiff alleges the same causes of action and claims the same damages against all defendants and does not explicitly allege anything differently against any defendant individually. (Id.) Further, based on Plaintiff's own allegations, it is undisputable that Plaintiff regarded all defendants as closely related and that there is a "tight relatedness of the parties, contracts and controversies." Hays, 838 F.3d at 613; see also Trujillo v. Volt Mgmt. Corp., 846 F. App'x 233, 234–35 (5th Cir. Feb. 25, 2021). Accordingly, the Court concludes that Plaintiff's claims against ConocoPhillips must also be compelled pursuant to the Arbitration Notice, even if ConocoPhillips was not a signatory to the agreement, based on intertwined claims estoppel. Thus, ConocoPhillips motion to compel arbitration will also be **GRANTED**.

CONCLUSION

Based on the foregoing, the Court: (1) **GRANTS** Gryphon's Motion to Compel Arbitration and Dismiss Arbitration Proceedings (Dkt. # 20), (2) **OVERRULES** Plaintiff's Objections to Gryphon's Reply Brief (Dkt. # 26) and (3) **GRANTS** ConocoPhillips's Motion to Compel Arbitration (Dkt. # 24). It is **ORDERED** that the parties **SHALL** arbitrate all claims in the above-captioned case before a neutral arbitrator.

The FAA provides that when a court properly and mandatorily refers claims to arbitration it shall stay the case until arbitration is complete. However, "[t]he weight of authority clearly supports dismissal of the case [as opposed to staying the suit] when all of the issues raised in the district courts must be submitted to arbitration." Rodgers-Glass, 2015 WL 4190598 at 8 (quoting Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992)). In this case, all of Plaintiff's claims are subject to mandatory arbitration and the Court therefore **FURTHER ORDERS** that Plaintiff's claims against Defendants be **DISMISSED WITHOUT PREJUDICE**. The Clerk's Office is **INSTRUCTED** to **CLOSE THE CASE**.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, November 21, 2023.

David Alan Ezra
Senior United States District Judge